# United States District Court
# Central District of California

| | |
|---|---|
| AARON KAUFMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>CHUBB LIMITED, et al.,<br><br>    Defendants. | Case № 2:18-cv-00844-ODW (MRWx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [30]** |

## I.    INTRODUCTION

Plaintiff Aaron Kaufman ("Plaintiff") filed the instant matter on September 8, 2017, in Los Angeles Superior Court seeking a declaration that he was entitled to a defense under his homeowners' policy issued by Defendant Federal Insurance Company ("Federal"). The defense that Plaintiff seeks is in connection with a cross-complaint and amended cross-complaint ("Cross-Complaint" and "FACC") filed against Plaintiff by his former employer in the underlying action styled, *Kaufman v. California Physicians Services dba Blue Shield of California*, Case No. BC577827, Los Angeles County Superior Court ("Underlying Action"). Defendants removed the case to this Court on February 1, 2018. (Notice of Removal, ECF No. 1.) Pending before the Court is Defendants, Federal Insurance Company ("Federal") and Chubb National Insurance Company ("Chubb"), Motion for Summary Judgment, or in the alternative,

Partial Summary Judgment ("Motion"). (ECF No. 30.) For the following reasons, the Court **GRANTS** Defendants' Motion.[1]

## II. FACTUAL BACKGROUND

Plaintiff was employed by California Physicians Services dba Blue Shield of California ("Blue Shield") as its Chief Technology Officer and Vice President of Health Information Technology from March 13, 2013, to March 10, 2015. (Defendants' Statement of Uncontroverted Facts and Conclusions of Law ("DSUF") 1, ECF No. 30-2.) Plaintiff worked for Blue Shield's office in San Francisco, California. (DSUF 2.) Federal issued Masterpiece Policy Number 14288420-01 to Plaintiff for the policy period October 15, 2014, to October 15, 2015, (the "Policy"), which provided "Personal Liability Coverage" for suits filed anywhere in the world, including California. (DSUF 3, 5, 6.) The scope of coverage was limited to personal injury or property damage. (Decl. of Elizabeth L. Musser ("Musser Decl.") Ex. P (the "Policy"), T-1, ECF No. 30-12.) "Personal injury" is defined to include libel, slander, defamation of character, or invasion of privacy. (*Id.*) Under the Policy, "[Federal] will defend a covered person against any suit seeking covered damages for personal injury or property damage." (*Id.*) The Policy contains two exceptions that limit the scope of its coverage: director's liability and business pursuits. (DSUF 9, 10.) Under the director's liability exception there is no coverage for "any damages for any covered person's actions or failure to act as an officer or member of a board of directors of any corporation or organization." (DSUF 9.) Under the business disputes exception, there is no coverage for "any damages arising out of a covered person's business pursuit, investment or other for-profit-activities, any of which are conducted on behalf of a covered person or others, or business property . . ." nor "damages or consequences resulting from business or professional care or services performed or not performed." (DSUF 10.)

---

[1] After considering the papers filed in connection with this Motion, the Court deemed this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

On April 6, 2015, Plaintiff filed a complaint against Blue Shield and asserted causes of action related to his termination from Blue Shield. (DSUF 11.) In response, on April 21, 2015, Blue Shield filed a Cross-Complaint against Plaintiff. (DSUF 17.) In the Cross-Complaint, Blue Shield asserted causes of action against Plaintiff for (1) Fraud; (2) Breach of Fiduciary Duty; (3) Breach of the Duty of Loyalty; (4) Conversion; and (5) Negligent Misrepresentation. (DSUF 18.) Blue Shield sought "to recover the substantial amount of money that its former Vice President and Chief Technology Officer Aaron Kaufman knowingly misappropriated from Blue Shield, before being terminated." (DSUF 20.) Blue Shield discovered the alleged misappropriation after it investigated Plaintiff's conduct following an after-hours company event at a San Francisco bowling alley on January 6, 2015. (DSUF 22.) Plaintiff organized the event and invited several Blue Shield employees and their spouses or significant others to attend the event, and Plaintiff was joined by his girlfriend. (DSUF 22.) Blue Shield alleged that at some point during the event, Plaintiff's girlfriend posted inappropriate photos of herself while at the bowling alley and shared them on social media sites. (DSUF 23.)

As a result of the investigation, Blue Shield alleged that Plaintiff, "(1) violat[ed] Blue Shield's Travel and Expense Policy; (2) violat[ed] Blue Shield's Code of Conduct; (3) interfer[ed] with an investigation; and (4) caus[ed] reputational damage to Blue Shield," which led Blue Shield to terminate Plaintiff's employment. (DSUF 24.) Blue Shield's Cross-Complaint sought "(1) damages arising out of Kaufman's fraudulent misrepresentations, breaches of fiduciary duty, breaches of the duty of loyalty and conversion; (2) disgorgement from Plaintiff and restitution to Blue Shield of Plaintiff's personal expenses improperly charged to and paid by Blue Shield; (3) punitive damages; (4) an order dismissing Plaintiff's complaint; (5) interest; and (6) attorney's fees." (DSUF 26.)

On or about April 28, 2015, Plaintiff tendered the Cross-Complaint to Defendant Federal for coverage under the Policy. (DSUF 28.) On or about May 12, 2015, a claims

adjuster in California sent a letter to Plaintiff's counsel advising him that there was no obligation to provide coverage for Plaintiff in the Cross-Complaint. (DSUF 29.) Following a demurrer, on September 14, 2015, Blue Shield filed its First Amended Cross-Complaint ("FACC") in the Underlying Action and asserted causes of action against Plaintiff for (1) Fraud - Intentional Misrepresentation; (2) Fraud - Concealment; (3) Negligent Misrepresentation; (4) Breach of Fiduciary Duty; and (5) Breach of the Duty of Loyalty. (DSUF 34.) Around September 29, 2015, and October 16, 2015, Plaintiff tendered the FACC for coverage under the Policy. (DSUF 43.) On October 28, 2015, Defendants denied coverage again, and invited Plaintiff to provide additional information supporting a claim for coverage under the Policy. (DSUF 44.) Neither Plaintiff nor his counsel provided additional information in support of coverage. (DSUF 45.)

The Underlying Action was tried to a jury in March 2017, and on March 17, 2017, the jury returned a verdict which denied any remedy to Blue Shield on its FACC, and also denied any remedy to Plaintiff on his complaint. (DSUF 51–52.)

Following the conclusion of the Underlying Action, Plaintiff initiated the instant matter on September 8, 2017, seeking a declaration that he was entitled to a defense under his homeowners' policy in the Underlying Action. (Mot. 1.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott,* 550 U.S. at 378. A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment.

*Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though a court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

## IV. DISCUSSION

Federal contends it is entitled to summary judgment because the Cross-Complaint and FACC in the Underlying Action did not assert any claim coming within

the coverage of the Policy. (Mot. 1.) Chubb contends that it is entitled to summary judgment because it is a separate entity from Federal and did not issue the Policy and therefore has no contractual or legal relationship with Plaintiff. (*Id.*) Plaintiff alleges that he was entitled to a defense in the Underlying Action because the Cross-Complaint and FACC presented a *potential* claim under the Policy. (Opp'n to Mot. for Summary J. ("Opp'n") 12, ECF No. 33.) Plaintiff also argues that Chubb is responsible because the Policy was a "Chubb Masterpiece Personal Liability Insurance Policy" issued by Federal.

## A. Duty to Defend

Under California law, the duty to defend is determined by "comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy." *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263, 276 (1966). "A duty to defend exists whenever the lawsuit against the insured seeks damages on any theory that, if proved, would be covered by the policy." *Montrose Chem. Corp. of Calif. v. Superior Court*, 6 Cal. 4th 287, 300 (1993). "[T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Id.* at 295 (emphasis in original). However, the insurer's duty to defend does not extend to claims for which there is no potential for liability coverage under the policy; this includes claims which fall outside the scope of the policy or are expressly excluded under the policy. *See Alterra Excess & Surplus Ins. Co. v. Snyder*, 234 Cal. App. 4th 1390, 1401–1402 (2015). Further, "[a]n insured may not trigger the duty to defend by speculating about extraneous 'facts' regarding potential liability or ways in which the third party claimant might amend its complaint at a some future date." *Gunderson v. Fire Ins. Exch.*, 37 Cal. 4th 1106, 1114 (1995).

In determining whether a claim gives rise to a duty to defend under an insurance policy, courts are guided by the principle "that interpretation of an insurance policy is a question of law." *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 18 (1995).

"Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 821–822 (1990) (citation omitted). In determining this intent, courts "look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller*, 11 Cal. 4th at 18. The "clear and explicit" language of the policy is considered and interpreted in its "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." *AIU*, 51 Cal. 3d at 822. Courts "interpret the language in context, with regard to its intended function in the policy." *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1256 (1992).

The issue in this case is whether the Underlying Action included a covered claim under the "personal injury" provision of the Policy. Under the Policy, "personal injury" includes libel, slander, or defamation of character.

Under California law, defamation, which may be asserted as a claim for slander (oral) or libel (written), includes the following elements: "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *KM Strategic Management, LLC v. American Casualty Co. of Reading PA*, 156 F. Supp. 3d 1154, 1166–67 (C.D. Cal. 2015) (quoting *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1369 (2010)). Both slander and libel are specifically defined under the California Civil Code to require a "false and unprivileged publication" either oral or written. *KM Strategic Management*, 156 F. Supp. 3d at 1167. In order to be considered "a publication," the false statement must be made to at least one person other than the defamed. *Cabesuela v. Browning-Ferris Indus. of Cal., Inc.*, 68 Cal. App. 4th 101, 112 (1998). Finally, the statement must specifically refer to or concern the defamed plaintiff in some way. *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042 (1986).

Here, neither the Cross-Complaint nor the FACC contain a claim for defamation, libel or slander. Nor do they contain a *potential* claim for defamation, libel or slander.

In the Underlying Action, Blue Shield sought to recover from Plaintiff "the substantial amount of money that . . . Plaintiff Aaron Kaufman knowingly misappropriated from Blue Shield, before being terminated." (Cross-Complaint ¶ 1; FACC ¶ 1.) "Kaufman defrauded Blue Shield and betrayed his fiduciary duty and duty of loyalty to the company by knowingly and repeatedly using his corporate card to pay for personal expenditures . . . ." (FACC ¶ 2.) Blue Shield did not seek to recover for defamation, libel or slander, or any similar claim.

In cases where a duty to defend for defamation or similar causes of action have been found, the factual allegations of the complaints giving rise to the duty to defend clearly set out a potential covered claim. For example, in *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 509 (2001), the court found a duty to defend where the complaint did not contain a claim for defamation, yet contained allegations that insured parties "told third persons that [a company's] methods of doing business were flawed and would result in its failure," and made other misrepresentations that disparaged or damaged the company. *Id.*; s*ee also KM Strategic Management*, 156 F. Supp. 3d at 1166 (finding a duty to defend where the complaint alleged that the insured parties published a false statement that an entity was in financial distress in order to draw away physicians from a health plan); *Dobrin v. Allstate Ins. Co.*, 897 F. Supp. 442 (C.D. Cal. 1995) (duty to defend existed where former law partner misrepresented nature and circumstance of the dissolution of a law firm in actively soliciting clients of the dissolved firm); *CNA Cas. Of California v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 608 (1986) (finding duty to defend under allegations that the insured had misrepresented facts about the plaintiffs in the Underlying Action to individuals the plaintiffs normally did business with in order to disrupt the business relationships between these individuals and the plaintiffs).

Plaintiff contends that the mention of "reputational damage" twice in the Cross-Complaint and once in the FACC gave rise to a potential claim for defamation. However, the mere mention of "reputational damage" is insufficient to bring the

allegation within a claim for defamation. In the Cross-Complaint and FACC, reputation damage was mentioned as the reason behind Plaintiff's termination and the results of Blue Shield's investigation into Plaintiff's conduct. (*See* Cross-Complaint ¶ 8 ("Blue Shield's investigation into Kaufman's conduct concluded that Kaufman had . . . caused reputational damage to Blue Shield."); FACC ¶ 54 ("Kaufman was terminated for: . . . causing reputational damage to Blue Shield.").)

*Total Call International Inc. v. Peerless Ins. Co.*, 181 Cal. App. 4th 161, 171 (2010) is particularly instructive to the "reputational damage" issue. In that case, the plaintiff alleged there was a duty to defend where the underlying complaint referenced a "damaged reputation." *Id.*. The court held that the mere fact that a third-party complaint mentions an element of a potential covered claim does not create a duty to defend "when the facts known to the insurer, viewed as a whole establish that no such claim is potentially asserted." *Id.* The underlying complaint in *Total Call* made no allegations that the plaintiff specifically referenced the other party when making false statements. *Id.* Instead, all that was alleged was that the plaintiff made false statements in connection with its own advertising for a certain product, but never referred to the other party in doing so. *Id.* Similarly, here, neither the Cross-Complaint nor the FACC contain allegations that Plaintiff made any false statements, oral or written, about Blue Shield. The mere mention that Plaintiff caused Blue Shield "reputational damage" does not create a duty to defend because the allegations, when viewed as a whole, establish that no defamation claim was potentially asserted. Additionally, when viewed in the proper context, the allegations relating to "reputational damage" related to the reasons for Plaintiff's termination. While the duty to defend in California is broad, this duty does not require the insurer to speculate "about extraneous 'facts' regarding potential liability or ways in which the third-party claimant might amend its complaint at some future date." *Gunderson v. Fire Ins. Exchange*, 37 Cal. App. 4th 1106, 1114 (1995).

Since there was no duty to defend a potential claim for slander, libel or defamation under the Policy, the Court will not analyze whether any of the potential

exceptions to coverage applied under the Policy. Additionally, because there was no duty to defend, Defendant had no duty to indemnify. *See Certain Underwriters at Lloyd's of London v. Superior Court*, 24 Cal. 4th 945, 958 (2001) ("[W]here there is no duty to defend, there *cannot be* a duty to indemnify.") (emphasis in original).

Additionally, since there was no duty to defend Plaintiff under the Policy, Defendants are not liable to Plaintiff for breach of contract. *See Travelers Cas. Ins. Co. of Am. v. Mesriani & Assoc.*, No. CV14-7898 GHK (AGRx), 2015 WL 12746710, at *3–5 (C.D. Cal. Apr. 1, 2015) (finding no breach of contract in the absence of a duty to defend on the part of the insurer). Finally, because there was no duty to defend under the policy, Defendants cannot be liable for breach of the implied covenant of good faith and fair dealing. *See Waller*, 11 Cal. 4th at 36 ("[I]f there is no *potential* for coverage and, hence, no duty to defend under the terms of the policy, there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer.") (emphasis in original).

Further, regardless of Chubb's relationship to Plaintiff under the Policy, the allegations in the Cross-Complaint and FACC do not give rise to a duty to defend, as discussed above. Accordingly, the issue of whether Chubb or Federal is responsible for the Policy is immaterial to the outcome of this Motion, and as such, the Court declines to address the issue.

\ \ \
\ \ \
\ \ \
\ \ \
\ \ \
\ \ \
\ \ \
\ \ \

## V. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment is **GRANTED**, and the parties' joint stipulation to continue trial (ECF No. 42) is **DENIED** as moot. The Court will issue judgment, and the Clerk of the Court shall close the case.

**IT IS SO ORDERED.**

May 3, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**